IN THE CIRCUIT COURT, SEVENTH JUDICIAL CIRCUIT
IN AND FOR ST. JOHNS COUNTY, FLORIDA

ANDREW ELDRIDGE,

            CASE NO:  CA18-1614

  Plaintiff,        DIVISION:  55

v.

TRUECORE BEHAVIORAL SOLUTIONS, LLC
F/K/A G4S YOUTH SERVICES

  Defendant.

_____/

**<u>AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

  Plaintiff, ANDREW ELDRIDGE ("Plaintiff"), sues Defendant, TRUECORE

BEHAVIORAL SOLUTIONS, LLC F/K/A G4S YOUTH SERVICES, LLC ("Defendant"), and

alleges:

**I.  JURISDICTION AND PARTIES**

  1.  This is an action for damages exceeding $15,000 and injunctive relief under the

Florida Public Sector Whistleblowers' Act ("FPWA"), the Florida Private Sector Whistleblowers'

Act ("FWA"), the Florida Civil Rights Act ("FCRA"), and 42 U.S.C. § 1981(a).

  2.  Plaintiff is a former employee of Defendant.  Specifically, and within the time

frame pertinent to this action, Plaintiff was employed as a Facility Administrator in St. Johns

County.  At the time of Plaintiff's unlawful termination, he was employed as a Facility

Administrator in St. Johns County, Florida.

  3.  Defendant was, within the time frame pertinent to this action, operating the

Hastings Comprehensive Mental Health Treatment Center and Gulf Academy (formerly known as

Hastings Youth Academy) (hereinafter referred to as "Hastings Center"), a state facility located in

Hastings, Florida.  The Hastings Center is a moderate risk, non-secure juvenile facility for boys

between the ages of 14 and 18. Defendant is a private, foreign limited liability company and operated the Hasting Center pursuant to an agreement it entered into with the State of Florida, Department of Juvenile Justice ("DJJ").

4.      Defendant' operation of the Hastings Center was subject to oversight by DJJ. This oversight extended into essential personnel matters, such as proper screening, qualifications, and training of Defendant's employees. As such, Defendant and DJJ were joint employers of Plaintiff.

5.      Plaintiff timely filed a charge of retaliation with the Florida Commission on Human Relations ("FCHR") on May 22, 2017. Plaintiff's timely filed charge of retaliation alleged unlawful employment actions by Defendant in its decision to suspend and later terminate his employment. The FCHR issued its Notice of Termination of Investigation on October 8, 2018. This action is timely filed.

6.      Plaintiff timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on May 29, 2017. This charge was dual-filed with the FCHR. Plaintiff's timely filed charge alleged discrimination based upon race, as well as retaliation. More than 180 days have passed since Plaintiff filed the charge and no cause finding was issued within that time frame. This action is timely filed.

## II.      STATEMENT OF FACTS

7.      Plaintiff began employment with Defendant in October of 1999.

8.      During the time material to this action, Plaintiff was supervised by Karl Knighten. Mr. Knighten is not Caucasian/white.

9.      Mr. Knighten supervised the facility administrators in the Atlantic Region.

10.     During the time material to this action, Plaintiff was the only Caucasian/white facility administrator employed by Defendant under Mr. Knighten's supervision.  Plaintiff was the facility administrator for the Hastings Center.

11.     In September of 2016, Plaintiff notified Defendant of objections he had to actions taken (and not taken) by Mr. Knighten.  In Plaintiff's written complaint to Defendant, Plaintiff made Defendant aware of a number of issues.

12.     One issue raised in Plaintiff's written complaint referenced in paragraph 11, supra, was that Plaintiff, the only Caucasian/white employee under Mr. Knighten's supervision, was being subjected to different treatment than his peers who were all outside of his protected class. Among other things, Mr. Knighten was disparaging Plaintiff by falsely claiming that Plaintiff had been responsible for contraband coming into the Hastings Center.  As Mr. Knighten was well aware, Plaintiff was not responsible for the introduction of this contraband and had made every effort to remove it and determine its actual source.

13.     Another issue raised in Plaintiff's written complaint referenced in paragraph 11, supra, was that Mr. Knighten was engaged in a conscious and deliberate scheme to withhold (i.e., not report) reportable information from DJJ and other pertinent authorities and individuals.  This reportable information included, but was not limited to, the following:  a youth at the Hastings Center tested positive for drugs, the existence of contraband within the Hastings Center, allegations that staff at the Hastings Center had introduced illegal contraband into the building and provided it to the youth(s), and allegations of inappropriate relations between the youth(s) and certain staff members.

14.     Two (2) days after Plaintiff engaged in the above-referenced protected activity, he was summarily suspended with pay by Defendant pending the outcome of an investigation.

3

Plaintiff was purportedly being investigated for the very same conduct attributed to Mr. Knighten in Plaintiff's written complaint.

15.     After having been placed on suspension, Plaintiff again complained to Defendant regarding Mr. Knighten's unlawful conduct.

16.     In October of 2016, Plaintiff was interviewed by Defendant.

17.     At this October, 2016 interview, Plaintiff provided Defendant with multiple examples and instances of race discrimination.

18.     Plaintiff also made it clear at this October, 2016 interview that he was suffering discrimination on account of his race.

19.     Additionally, during this interview, Plaintiff provided Defendant with information that undermined Mr. Knighten's baseless allegations against him.

20.     Plaintiff was interviewed again by Defendant in November of 2016.  During this interview, Plaintiff provided Defendant with additional information concerning Mr. Knighten's unlawful conduct, as well as the discrimination he had suffered.

21.     Plaintiff remained on paid suspension for the remainder of his employment with Defendant.

22.     During Plaintiff's time on suspension, the State of Florida began an investigation into the issue of the contraband entering the facility and the positive drug test result of a youth under Defendant's care and supervision.

23.     Plaintiff was the complainant that began the State of Florida's investigation.

24.     Plaintiff was interviewed concerning the substance of his complaint(s) with Defendant.

25.     However, during the course of the investigation, Mr. Knighten continued to disparage Plaintiff.  False allegations of misconduct were made against Plaintiff during the course of the investigation.

26.     Plaintiff was never interviewed regarding the substance of those additional allegations from Mr. Knighten or given an opportunity to respond to them prior to the issuance of a draft investigative report by the State of Florida.  This fact was patent from the face of the draft investigative report compiled by the State of Florida.

27.     In February of 2017, the State of Florida issued a draft report of the findings of its investigation.

28.     This draft report contained a draft conclusion finding that Plaintiff had engaged in misconduct.  It also concluded that Mr. Knighten had engaged in misconduct.

29.     Defendant terminated Plaintiff on April 13, 2017.

30.     Plaintiff was allegedly terminated based upon the draft report compiled by the State of Florida, as well as its internal investigation.

31.     Mr. Knighten was not terminated based on the findings contained within the draft investigative report compiled by the State of Florida.

32.     No other employee of Defendant has ever been terminated based on the findings contained within a draft investigative report compiled by the State of Florida

33.     Defendant hired a replacement for Plaintiff.   The replacement is not Caucasian/white.

34.     Defendant's articulated reason for terminating Plaintiff's employment was false and pretextual.

35.     As a consequence of Defendant's illegal conduct, Plaintiff has retained counsel to represent him in this matter.  Plaintiff has incurred, and will continue to incur, attorneys' fees and costs associated with that representation.

## COUNT I
### RETALIATION IN VIOLATION OF THE FLORIDA PUBLIC SECTOR WHISTLEBLOWERS' ACT, § 112.3187 *ET SEQ*

36.     Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

37.     Defendant violated the FPWA by taking adverse personnel action against Plaintiff by terminating his employment because of his protected activity.

38.     Plaintiff's protected activity included, but was not limited to, complaints of actual or suspected violations of rules 63F-11.002-04 of the Florida Administrative Code.  These rules establish reporting requirements, requirements that applied to Defendant.  Among other things, these rules required the prompt reporting of incidents of drug use by youths under the supervision of Defendant and allegations of inappropriate relations between youths and staff.

39.     Plaintiff's written and signed complaints were sent or provided to supervisory officials.  Each of Plaintiff's protected activities were disclosed to an individual with the ability to investigate complaints and make reports or recommend corrective action.

40.     Defendant was aware of Plaintiff's protected activity.

41.     Defendant terminated Plaintiff because of his protected acts.

42.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

6

43.     As a further result of Defendant's unlawful action, Plaintiff is entitled to temporary reinstatement pursuant to § 112.3187(9)(f).  Plaintiff engaged in protected activity as defined by § 112.3187(5), was discharged from his employment, and he engaged in protected activity prior in time to the initiation of a personnel action against him.  Consequently, Plaintiff demands that he be temporarily reinstated to his position with Defendant.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of loss of earning capacity, lost wages and benefits, backpay, reinstatement or front pay, compensatory or emotional distress damages, repayment of attorneys' fees and costs pursuant to § 112.3187(9)(d), prejudgment interest, temporary reinstatement pursuant to § 112.3187(9)(f), permanently restraining Defendant's continued violation of § 112.3187, and any other relief the court deems to be just, equitable and proper.

## <u>COUNT II</u>
## RETALIATION IN VIOLATION OF THE FLORIDA PRIVATE WHISTLEBLOWERS' ACT, § 448.101 *ET SEQ*

44.     Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

45.     Defendant employed ten (10) or more employees at all times material to this action. Therefore, Defendant constitutes an "employer" within the meaning of the FWA.

46.     Plaintiff engaged in protected activity under the FWA.  Thus, Plaintiff was, and is, entitled to its protections.

47.     Plaintiff's protected activity included, but was not limited to, complaints of actual or suspected violations of rules 63F-11.002-04 of the Florida Administrative Code.  These rules establish reporting requirements, requirements that applied to Defendant.  Among other things,

these rules required the prompt reporting of incidents of drug use by youths under the supervision of Defendant and allegations of inappropriate relations between youths and staff.

48.     Defendant was aware of Plaintiff's protected activities.

49.     Defendant terminated Plaintiff because of his protected acts.

50.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of loss of earning capacity, lost wages and benefits, backpay, reinstatement or front pay, compensatory or emotional distress damages, repayment of attorneys' fees and costs pursuant to § 448.104, prejudgment interest, and any and all other relief this court deems to be just, equitable, and proper.

## COUNT III
## DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992, § 760.01 *ET SEQ*

51.     Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

52.     Plaintiff is the member of a protected class (race), was qualified for the position he held, and was subjected to adverse employment action when he was terminated.

53.     Additionally, Plaintiff engaged in protected activity under the FCRA when he notified Defendant that he was being subjected to disparate treatment on the basis of his race. Thus, Plaintiff is entitled to the anti-retaliation protections of the FCRA.

54.     Plaintiff's protected classes (race) and protected activities were a motivating factor, as well as the but-for cause, of the adverse employment actions to which he was subjected.

55.     Defendant's alleged reason(s) for the adverse employment action at issue in this matter are untrue and merely a ruse for discrimination and/or retaliation.

56.     Plaintiff was treated differently and subjected to adverse employment action on account of his race.

57.     Plaintiff was treated differently and subjected to adverse employment action on account of, and in retaliation for, his protected activities.

58.     The discrimination and retaliation described above was done maliciously and with a reckless disregard for Plaintiff's protected rights under the law.

59.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of earning capacity, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, repayment for attorneys' fees and costs pursuant to § 760.11, punitive damages, prejudgment interest, equitable relief, and any and all other relief that the court deems just, equitable, and proper.

## <u>COUNT IV</u>
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

60.     Plaintiff hereby restates and realleges each and every factual allegation contained within paragraphs 1-35.

61.     The unlawful discrimination described above denied Plaintiff the same right to make and enforce contracts as protected by 42 U.S.C. § 1981, as amended in 1991.

62.     Plaintiff's race was a motivating factor, as well as the but-for cause, of the adverse employment actions he suffered.  Plaintiff was treated differently than other employees during his employment and when he was terminated.

63.     The discrimination described above was done maliciously and with a reckless disregard for Plaintiff's federally protected rights.

64.     As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, and loss of other employment benefits.  In addition, Plaintiff has suffered and continues to suffer mental anguish, distress, humiliation, great expense, and loss of enjoyment of life.

WHEREFORE, Plaintiff demands a trial by jury and relief in the form of economic damages, back pay, reinstatement or front pay, compensatory and emotional distress damages, damages for loss of earning capacity, reimbursement for attorneys' fees and costs pursuant to 42 U.S.C. § 1988, punitive damages, prejudgment interest, equitable relief, and any other such relief that the court deems appropriate.

Respectfully submitted,

/s/Ronald P. Angerer, II
Archibald J. Thomas, III
Florida Bar No. 231657
archibald@job-rights.com
Ronald P. Angerer, II
Florida Bar No. 0104874
ronald@job-rights.com
ARCHIBALD J. THOMAS, III, P.A.
4651 Salisbury Road, Suite 255
Jacksonville, Florida 32256
(904) 396-2322 (Telephone)
(904) 296-2341 (Facsimile)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7, 2019, a copy of the foregoing **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** has been furnished filed with the Clerk of the Court via the e-filing portal and served to the following as indicated:

Michael G. Prendergast, Esq.
FORDHARRISON LLP
225 Water Street, Suite 710
Jacksonville, FL 32203
Telephone: (904) 357-2000
Facsimile: (904) 357-2001
mprendergast@fordharrison.com
smcquaide@fordharrison.com

Todd S. Aidman, Esq.
Viktoryia Johnson, Esq.
FORDHARRISON LLP
101 E. Kennedy Blvd., Suite 900
Tampa, FL 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899
taidman@fordharrison.com
mkey@fordharrison.com
vjohnson@fordharrison.com
lwebber@fordharrison.com

ATTORNEYS FOR DEFENDANT

/s/ Ronald P. Angerer, II
Attorney